IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANGELA STALEY, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) UMAR SERVICES, INC., ) ) Defendant. ) ) | CIVIL ACTION NO.: 1:21-cv-42<br><br>COLLECTIVE and CLASS ACTION COMPLAINT |

Plaintiff, Angela Staley ("Staley"), individually and on behalf of all other similarly situated employees, by and through her counsel, brings claims as a Collective Action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq*. (the "FLSA") and as a Class Action pursuant to the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et. seq*. ("NCWHA") against UMAR Services, Inc. ("UMAR" or "Defendant"), and alleges, upon personal belief as to herself and her own acts, and as for all other matters, upon information and belief, and based upon the investigation made by her counsel, as follows:

## NATURE OF ACTION

1. Staley contends that Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA") by knowingly suffering and/or permitting Staley and similarly situated Direct Support Professional-Live In ("DSP-LI") employees to work in excess of 40 hours per workweek without properly compensating them at an overtime premium rate for these overtime hours.

1

2. Staley contends that Defendant violated the NCWHA by failing to pay all earned regular wages to Staley and similarly situated employees DSP-LIs on their regularly scheduled paydays.

3. Staley brings her claim for unpaid overtime compensation on behalf of herself and others similarly situated DSP-LIs as an opt-in collective action pursuant to the FLSA. Staley brings her claims for unpaid wages under the NCWHA on behalf of herself and all other similarly situated DSP-LIs as an opt-out class action pursuant to Fed. R. Civ. P. 23.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

5. This Court has jurisdiction over Staley's claims pursuant to 28 U.S.C. §1331 because Staley's claims arise under the FLSA.

6. The claims for violations of the NCWHA are based on the statutory law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same common nucleus of operative facts as the FLSA claim.

7. All causes of action alleged by Staley can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

8. This Court has personal jurisdiction because Defendant conducts substantial business in Guilford County, North Carolina, which is located within this judicial district.

9. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Guilford County, North Carolina, which is located within this judicial district.

## PARTIES

10. Staley is a resident of Greensboro, North Carolina and worked for Defendant as a DSP-LI.

11. UMAR is a nonprofit organization that provides housing services to adults with intellectual or developmental disabilities. UMAR operates 21 group homes in North Carolina.

12. At all times relevant, Defendant was Staley's "employer" as defined by the FLSA, 29 U.S.C. §203(d). Throughout the relevant period, Defendant employed Staley and similarly situated DSP-LIs within the meaning of the FLSA.

13. At all times hereinafter mentioned, Defendant has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

14. At all times hereinafter mentioned, Staley and similarly situated DSP-LIs were employees within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## FACTS

15. DSP-LIs provide UMAR's clients with direct support for their daily needs, including medication administration and personal care assistance.

16. UMAR staffs its group homes with DSP-LIs who typically work a seven-day schedule, followed by seven days off.

17. DSP-LIs are scheduled to work a seven-day schedule that begins on Wednesday of each week.

18. All scheduled overnight work shifts for DSP-LIs include eight hours of unpaid sleep time each night, from 10:00 p.m. until 6:00 a.m. DSP-LIs are required to remain at UMARs facilities during sleep time.

19. On Mondays through Fridays, DSP-LIs are relieved of all job duties from 9:00 a.m. and 3:00 p.m. DSP-LIs are required to clock-out at 9:00 a.m. each weekday and clock-in at 3:00 p.m. that same day. DSP-LIs are not permitted to remain at UMARs' group homes during these hours, they are not on-call, and they are relieved of all job duties during these daytime hours. UMAR permits Staley to return to UMAR's facility at 4:30 each weekday (instead of 3:00 p.m.).

20. On Saturdays andサンdays, DSP-LIs are clocked-in from 6:00 a.m. until 10:00 p.m. and are required to remain at UMAR's facility for eight hours of unpaid sleep time. Staley's regular work schedule ends at 9:00 a.m. on Saturday and she is not normally scheduled to work the remainder of the weekend, unless she covers for another DSP-LI and works additional shifts.

21. UMAR's payroll for DSP-LIs is computed from a Sunday to Saturday seven-day workweek and is paid biweekly.

22. Staley and similarly situated DSP-LIs work and have worked for Defendant during the FLSA and NCWHA statutory periods. Amongst other things, Staley and similarly situated DSP-LIs all shared similar training, job descriptions and job tasks. Importantly, Staley and similarly situated DSP-LIs were all paid hourly rates of pay and are scheduled for work shifts that include unpaid sleep time.

23. Defendant has employed Staley as a DSP-LI since approximately 2017.

24. Staley regularly accepts additional work shifts to cover for DSP-LIs who are absent from work. These additional shifts include unpaid sleep time hours.

25. UMAR does not have a lawful basis for treating sleep time hours worked by DSP-LIs as non-compensable time.

26. UMAR has unlawfully failed to pay Staley and similarly situated DSP-LIs both regular and overtime pay by treating sleep time hours as non-compensable time.

27. During the three-year period preceding the filing of this Complaint, Staley has worked one or more workweeks that exceeded forty hours without being paid for all overtime worked.

28. During the two-year period preceding the filing of this Complaint, Staley has worked one or more workweeks without being timely paid for all regular hours worked.

29. UMAR determined and controlled the total number of hours worked by Staley and similarly situated DSP-LIs, as well as the compensation paid to Staley and similarly situated DSP-LIs.

30. UMAR knew, and was aware at all times, that it did not pay DSP-LIs for eight hours of sleep time each overnight work shift as required by the FLSA.

31. The conduct alleged above reduced UMAR's labor and payroll costs.

32. Staley and similarly situated DSP-LIs were subject to UMAR's uniform policies and practices and were victims of UMAR's scheme to deprive them of overtime compensation. As a result of UMAR's improper and willful failure to pay Staley and similarly situated DSP-LIs in accordance with the requirements of the FLSA and the NCWHA, Staley and similarly situated DSP-LIs suffered lost regular and overtime wages, and other related damages.

### UMAR Willfully Violated the FLSA and the NCWHA

33. UMAR has no legitimate basis to believe that the sleep time worked by Staley and similarly situated DSP-LIs was not compensable under the FLSA and the NCWHA. Instead,

UMAR either knew or acted with reckless disregard of clearly applicable FLSA and NCWHA provisions in failing to pay Staley and similarly situated DSP-LIs regular and overtime compensation for all hours worked. UMAR's willful actions and/or willful failures to act, included, but were not necessarily limited to:

   a. UMAR chose to utilize a seven-day Sunday to Saturday workweek for payroll purposes, but scheduled Staley and similarly situated DSP-LIs from Wednesday to Wednesday, thus allowing UMAR to spread their scheduled hours over two workweeks to reduce the amount of overtime worked.

   b. UMAR chose to relieve DSP-LIs from all job duties each weekday from 9:00 a.m. until late afternoon and require that DSP-LIs vacate UMAR's premises during these time periods.

   c. UMAR lacks any good-faith basis to believe that Staley and similarly situated DSP-LIs fall within any exception under the FLSA that would permit UMAR to exclude sleep time from compensable work hours; and

   d. UMAR was aware that it would (and did) benefit financially by failing to pay Staley and similarly situated DSP-LIs for sleep time, thereby reducing labor and payroll costs.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

34.     Staley brings this collective action on behalf of herself and all others similarly situated pursuant to 29 U.S.C. § 216(b) to recover unpaid overtime wages, liquidated damages, and other damages related to Defendant's violation of the FLSA.

35.     Staley pursues the requested relief on behalf of the following individuals ("the Collective"):

6

Case 1:21-cv-00042-LCB-JEP   Document 1   Filed 01/15/21   Page 6 of 14

> **All individuals who currently work, or have worked, for Defendant as a DSP-LI at any time within the preceding 3-years from the date of filing the complaint.**

36. Staley is a member of the Collective she seeks to represent because she was employed by Defendant during the relevant period, routinely suffered or was permitted to work more than 40 hours per week, as described above, and was not paid an overtime premium rate for all time she worked over 40 hours per workweek.

37. Specifically, Defendant engaged in common schemes to avoid paying Staley and similarly situated DSP-LIs overtime pay for eight hours of sleep time each overnight work shift.

38. Although Staley and similarly situated DSP-LIs may have worked in different locations throughout the relevant period, this action may be properly maintained as a collective because:

   a. Staley and similarly situated DSP-LIs were all paid under the same compensation structure;

   b. Staley and similarly situated DSP-LIs were all scheduled for shifts that included eight hours of unpaid sleep time;

   c. Staley and similarly situated DSP-LIs worked in excess of 40 hours per week during one or more workweeks while employed by Defendant;

   d. Regardless of their location, Defendant did not pay Staley and similarly situated DSP-LIs an overtime premium of 1½ times their regular hourly rate for all time worked in excess of 40 hours per workweek; and

   e. Defendant maintained common timekeeping and payroll systems and policies with respect to Staley and similarly situated DSP-LIs, regardless of their location.

39. Defendant encouraged, suffered, and permitted Staley and similarly situated DSP-LIs to work more than forty (40) hours per week without proper overtime compensation.

40. Defendant knew that Staley and similarly situated DSP-LIs performed work that required additional wages and overtime compensation to be paid. Nonetheless, Defendant

operated under a scheme, as previously described, to deprive Staley and similarly situated DSP-LIs of wages and overtime compensation.

41. Defendant's conduct as alleged herein was willful and has caused damage to Staley and similarly situated DSP-LIs.

42. Defendant is liable under the FLSA for failing to properly pay Staley and similarly situated DSP-LIs overtime wages. Staley requests that the Court authorize notice to the members of the Collective to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking unpaid overtime compensation, liquidated damages under FLSA, and the other relief requested herein.

43. Staley estimates that the collective, including both current and former employees over the relevant period, will include more than 50 members. The precise number of the Collective should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from Staley as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b). Given the composition and size of the collective class, its members may be informed of the pendency of this action directly via U.S. mail and e-mail.

## CLASS ACTION ALLEGATIONS

44. Staley brings Count II of her Complaint pursuant to Fed. R. Civ. P. 23 on behalf of herself and the following class:

> **All individuals who currently work, or have worked, for Defendant as an DSP-LIs at any time within the preceding 2-years from the date of filing the complaint.**

45. This action under NCWHA, N.C. Gen. Stat. §§ 95-25.6 and 95-25.7, is maintainable as a class action pursuant to Rule 23 for failure to pay promised and earned wages for all hours worked by Plaintiff and members of the proposed class on their scheduled paydays.

46. The proposed class is easily ascertainable. The number and identity of NCWHA class members are determinable from Defendant's payroll records or records over which it has control.

47. The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class is comprised of in excess of 50 individuals.

48. There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class in that Plaintiff and all members of the proposed class have been harmed by Defendant's failure to pay earned wages. The common questions of law and fact include, but are not limited to the following:

    (a) whether UMAR maintained a policy and practice of failing to pay Staley and all members of the proposed class for eight hours of sleep time during each scheduled overnight shift;

    (b) whether the sleep time at issue in this lawsuit is compensable under the NCWHA;

    (c) whether Defendant failed to timely pay Staley and members of the proposed class promised and earned regular wages for all hours worked on their regular pay days; and

    (d) whether the policies and practices described above violate NCWHA §§ 95-25.6 and 95-25.7.

49. The damages suffered by Staley and the members of the proposed class arise from the same common nucleus of operative facts.

50. The claims alleged by Staley are typical of those claims that could be alleged by any member of the proposed class and the relief sought is typical of the relief that would be sought by each member of the class in separate actions. All class members were subject to the same compensation practices of Defendant; i.e. refusing to timely pay all promised and earned wages on their regular payday by failing to pay for sleep time. The compensation policies and practices

9

Case 1:21-cv-00042-LCB-JEP   Document 1   Filed 01/15/21   Page 9 of 14

of Defendant affected all class members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each class member. Staley and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

51. Staley is able to fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Staley and members of the proposed class. Staley has retained counsel who is experienced and competent in both wage and hour and multi-plaintiff litigation.

52. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the loss, injuries, and damages suffered by each of the individual class members are modest, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

53. Important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for the Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## COUNT I: FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA FOR ALL OVERTIME HOURS WORKED

54. Staley realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

55. Defendant operates an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

56. Staley and similarly situated DSP-LIs are similarly-situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

57. FLSA Section 207(a)(1) states that an employee must be paid an overtime rate, equal to at least 1½ times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

58. Throughout the relevant period, Defendant violated the FLSA by routinely suffering or permitting Plaintiffs to work overtime hours each week without paying them premium overtime pay.

59. Throughout the relevant period, Staley and similarly situated DSP-LIs each worked in excess of 40 hours per week during one or more workweeks but were not paid an overtime premium of 1½ times their regular hourly rate for all of those additional hours.

60. Defendant's actions described in this Complaint violated the FLSA.

61. Defendant's actions were willful and not in good faith.

62. Staley and similarly situated DSP-LIs have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of overtime wages owed for time worked in excess of 40 hours per week from which Defendant derived a direct and substantial benefit.

11

Case 1:21-cv-00042-LCB-JEP   Document 1   Filed 01/15/21   Page 11 of 14

63. Defendant is liable to Staley and similarly situated DSP-LIs for actual damages, liquidated damages and equitable relief pursuant to 29 U.S.C. §216(b) as well as reasonable attorneys' fees, costs and expenses.

64. Staley and similarly situated DSP-LIs are also entitled to injunctive relief to prevent Defendant from continuing their violation of the FLSA and other appropriate class-wide injunctive relief.

## COUNT II: VIOLATION OF THE NCWHA

65. Staley realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

66. Count II arises from Defendant's policy and practice of suffering or permitting Staley and similarly situated DSP-LIs to work without timely paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

67. Defendant violated N.C. Gen. Stat. §§ 95-25.6 and 95-25.7 by failing to pay Staley and similarly situated DSP-LIs all promised and earned wage payments on the employees' regular payday for all hours worked.

68. Defendant's violation of the NCWHA was willful.

## **PRAYER FOR RELIEF**

WHEREFORE , Staley, individually and on behalf of all others similarly situated, by and through her attorneys, demands judgment against Defendant, jointly and severally, and in favor of Staley and all others similarly situated, for a sum that will properly, adequately and completely compensate Staley and all others similarly situated for the nature, extent and duration of their damages, the costs of this action and as follows:

A. Order the Defendant to file with this Court and furnish to counsel a list of all names, telephone numbers, e-mail addresses and home addresses of all DSP-LIs who have worked for the Defendant within the last three years;

B. Authorize Staley's counsel to issue notice via U.S. Mail and e-mail at the earliest possible time to all DSP-LIs who worked for the Defendant within the last three years, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they were deprived of overtime compensation, as required by the FLSA;

C. Authorize Staley's counsel to issue notice via U.S. Mail and e-mail at the earliest possible time to all DSP-LIs who worked for the Defendant within the last two years, informing them that this action has been filed, of the nature of the action, and of their rights pursuant to the NCWHA and Rule 23 of the Federal Rules of Civil Procedure;

D. Certify Staley's FLSA claim as a collective action;

E. Certify Staley's NCWHA claim as a class action;

F. Declare and find that the Defendant committed one or more of the following acts:

   i. Violated provisions of the FLSA by failing to pay overtime wages to Staley and similarly-situated persons who opt-in to this action;

   ii. Willfully violated provisions of the FLSA;

   iii. Violated provisions of NCWHA by failing to pay all earned regular wages to Staley and members of the class on regularly scheduled paydays;

   iv. Willfully violated provisions of the NCWHA;

G. Award compensatory damages, including all regular and overtime wages owed in an amount according to proof;

H. Award liquidated damages on all compensation due accruing from the date such amounts were due;

I. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

J. Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

K. For such further relief as the Court deems just and equitable.

Dated: January 15, 2021						Respectfully Submitted,

						<u>/s/ Philip J. Gibbons, Jr.</u>
						Philip J. Gibbons, Jr., NCSB #50276
						Craig L. Leis, NCSB #48582
						**GIBBONS LEIS, PLLC**
						14045 Ballantyne Corporate Place, Ste. 325
						Charlotte, NC 28277
						Telephone: 704-612-0038
						Email:  phil@gibbonsleis.com
								craig@gibbonsleis.com