IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Angela Staley, *individually and on behalf of all others similarly situated*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 1:21CV42 ) ) |
| UMAR Services, Inc., | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

This matter comes before the Court on Plaintiff Angela Staley's Motion for Conditional Certification and Facilitation Notice, (ECF No. 20). Pursuant to the collective action provision of Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), Plaintiff seeks conditional certification of a proposed class of similarly situated former employees of Defendant UMAR Services, Inc., and authorization to send opt-in notices and consent forms of her design to such employees. For the reasons stated herein, Plaintiff's motion will be granted in part, and denied in part.

**I.     BACKGROUND**

Defendant UMAR is "a nonprofit organization that provides housing services to adults with intellectual or developmental disabilities." (ECF No. 1 ¶ 11.) It operates twenty-one group homes in North Carolina. (*Id.*) To operate these homes, Defendant has a group of employees designated as "Direct Support Professional-Live In" ("DSP-LI") employees. (*Id.* ¶¶ 1, 15–16.) DSP-LIs "provide [Defendant's] clients with direct support for their daily needs,

including medication administration and personal care assistance." (*Id.* ¶ 15.) They "work a seven-day schedule that begins on Wednesday of each week," on a seven-days-on/seven-days-off cadence. (*Id.* ¶¶ 16–17.) During their seven days working, Defendant requires the DSP-LIs to sleep at the group homes. (*Id.* ¶¶ 18–20.) DSP-LIs must clock out for this sleep time. (*Id.* ¶¶ 19-20.) However, if a resident requires assistance during the night, DSP-LIs must respond and are permitted to clock back in while they are responding. (ECF No. 21-1 ¶ 8.)

Plaintiff Staley was employed by Defendant as a DSP-LI from March 2020 to October 2021. (ECF No. 21-1 ¶ 2.) She initiated this action against Defendant "on behalf of herself and others similarly situated DSP-LIs as an opt-in collective action pursuant to the FLSA." (ECF No. 1 ¶ 3.) She alleges that Defendant willfully violated the FLSA by not paying DSP-LIs both regular and overtime pay in that it treated sleep time hours as non-compensable time. (*Id.* ¶¶ 25, 33, 34–43.)

At this stage in the proceedings, the parties have completed Phase I discovery related to class certification issues. (ECF Nos. 9 at 2; 30 at 1-2.) During this period, ten other DSP-LIs have consented to join the lawsuit as party plaintiffs. (ECF No. 19.) Relying on declarations from these additional DSP-LIs, Plaintiff has moved for conditional class certification. (ECF No. 20.)

## II. STANDARD OF REVIEW

The FLSA permits an employee to bring an action for unpaid minimum or overtime wages on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Employees are "similarly situated" if they "raise a similar legal issue as to coverage, exemption or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *McLaurin v. Prestage*

2

*Foods, Inc.*, 271 F.R.D. 465, 469 (E.D.N.C. 2010) (quoting *De Luna-Guerrero v. N.C. Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004); *see also Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 772 (D. Md. 2008) ("A group of potential plaintiffs are 'similarly situated' when the they together were victims of a common policy or scheme or plan that violated the law."). FLSA collective actions are unlike Fed. R. Civ. P. 23(b)(3) class actions in that FLSA collective actions require class members to opt-in by filing written consent to the suit. *McLaurin*, 265 F.R.D. at 469 & n.2. Thus, "[t]here are two requirements for the certification of an FLSA collective action." *Id.* First, there must be "similarly situated" members of a proposed class. *Id.* Second, the class members must opt in. *Id.*

Courts supervising FLSA collective actions generally control certification through a two-step process.[1] *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 604 (S.D. W. Va. 2020) (collecting cases). In the first step, "the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010)). "Once this hurdle has been cleared, a court conditionally certifies the class so that potential plaintiffs may be notified of the pending action and choose to opt-in if they wish to do so, and

---

[1] The Fifth Circuit recently observed that "FLSA collective actions rarely (if ever) reach the courts of appeals at the notice stage because 'conditional certification' is not a final judgment." *Swales v. KLLM Trans. Servs., L.L.C.*, 985 F.3d 430, 436 (5th Cir. 2021). In the absence of guidance from the courts of appeals, "district courts . . . have arrived at a loose consensus as to the proper procedure' for certifying collective actions." *Id.* (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108 (9th Cir. 2018)). The two-step approach detailed here is "the near-universal practice" among courts. *Campbell*, 903 F.3d at 1100. Although the Fifth Circuit squarely rejected this approach last year, *Swales*, 985 F.3d at 439, the Court will use it here because it is standard practice among courts in the Fourth Circuit and the Fourth Circuit has not addressed the issue. *See Santos v. E&R Servs., Inc.*, No. DLB-20-2737, 2021 WL 6073039, at *3 (D. Md. Dec. 23, 2021) (declining to adopt the Fifth Circuit approach); *Amoko v. N&C Claims Serv., Inc.*, 577 F. Supp. 3d 408, 414 (D.S.C. 2021) (same); *Ison v. MarkWest Energy Partners, LP*, No. CV 21-0333, 2021 WL 5989084, at *4 (S.D. W. Va. Dec. 17, 2021) (same).

3

the action [then] proceeds as a representative action throughout discovery." *Rickets v. NV5, LLC*, 21-cv-56, 2022 WL 949947, at *2 (S.D. W.Va. Mar. 29, 2022) (citing *O'Quinn*, 469 F. Supp. 3d at 604). The second step comes after discovery is largely complete; at that point, "the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action." *Adams*, 93 F. Supp. 3d at 453 (quoting *Acevedo*, 600 F.3d at 519).

Plaintiff's present motion for conditional certification pertains only to the first step of the foregoing process. Courts use a "fairly lenient" standard at this stage." *Goldston v. Ariel Comty. Care, LLC*, 21-cv-615, 2022 WL 1289673, at *5 (M.D.N.C. Apr. 29, 2022) (quoting *Adams*, 93 F. Supp. 3d at 453). Although a plaintiff seeking conditional certification for the purpose of sending out opt-in notices cannot rely on mere allegations in the complaint, the plaintiff need only make "a relatively modest factual showing" that a group of similarly situated potential plaintiffs exists. *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006). This showing can be made by affidavit, by declaration, or by "other means." *Williams v. Long*, 585 F. Supp. 2d 679, 685 (D. Md. 2008). At this stage, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations," *Adams*, 93 F. Supp. 3d at 454 (quoting *Fisher v. Mich. Bell. Tel. Co.*, 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009)).

The Court notes that some courts have applied a somewhat higher "intermediate" standard of review for this first step if the parties have engaged in discovery prior to a plaintiff's motion for conditional certification. *Long v. CPI Sec. Sys. Inc.*, 292 F.R.D. 296, 299 (W.D.N.C. 2013). However, "the majority of courts in the Fourth Circuit adhere to the two-stage analysis" and reject this "intermediate" standard. *Id.* Furthermore, some courts have

4

Case 1:21-cv-00042-LCB-JEP    Document 36    Filed 09/23/22    Page 4 of 15

expressed substantive concerns with the "intermediate" standard. *Id.* at 299–301; *see also Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 827 (D. Md. 2012) ("Assuming this [intermediate] approach is analytically sound, the Court would nonetheless display disinclination to inject this much flexibility—and, by extension, uncertainty—into the remedial scheme that § 216(b) contemplates."). Here, Plaintiff has addressed possible application of the "intermediate" standard due to the preliminary discovery in this case, (ECF No. 11 at 11–13), but Defendant has not. Because most courts in the Fourth Circuit have declined to use the "intermediate" approach, *Long*, 292 F.R.D. at 299, and because Defendant has not advocated for it, the Court will use the traditional lenient standard. *See Holland v. Fulenwider Enters., Inc.*, No. 17-CV-48, 2018 WL 700801, at *3 (W.D.N.C. Feb. 2, 2018) (applying "the normal, more lenient standard, following the precedent established by the bulk of the federal district courts within the purview of the Fourth Circuit" (collecting cases)).

## III. DISCUSSION

Plaintiff's basic contention is that Defendant violated the FLSA by requiring Plaintiff and other DSP-LIs to be on call at Defendant's group homes at night while clocked out, which had the result of depriving them of overtime wages. (ECF No. 21 at 9.) Thus, at this stage of the proceedings, Plaintiff must make a "relatively modest" showing that Defendant had a common policy of treating this time as non-compensable, *Marroquin*, 236 F.R.D. at 259, and must propose a class of prospective plaintiffs who were subject to this policy and share "at least a manageably similar factual setting," *McLaurin*, 271 F.R.D. at 469. For the reasons that follow, the Court finds that Plaintiff has carried her burden and will conditionally certify the class that she has proposed. (ECF No. 21 at 6.) However, the Court will not immediately authorize distribution of Plaintiff's proposed notice and consent forms. (ECF Nos. 21-10; 21-

5

11.) Instead, the Court will grant Defendant's request that the parties first confer on the form of the notices and manner of distribution. (ECF No. 33 at 11–12.)

### A. Plaintiff's Proposed Class Members Are Similarly Situated

Plaintiff has submitted declarations from nine DSP-LIs, all of whom worked for Defendant. (ECF Nos. 21-1; 21-2; 21-3; 21-4; 21-5; 21-6; 21-7; 21-8; 21-9.) In these declarations, the DSP-LIs state that they were paid on an hourly basis, and that Defendant had a policy that DSP-LIs clock out at night but remain at Defendant's group homes and on-call during those clocked-out, uncompensated hours. (*E.g.*, 21-7 ¶¶ 5, 10.) The DSP-LI declarations also include charts showing their clock-in and clock-out times over a typical seven-day work period and indicate that these times were standard shift times for all DSP-LIs. (*E.g.*, *id.* ¶¶ 8, 12–13.) These charts reflect work weeks that exceeded forty hours if sleep time is included.[2] (*E.g.*, *id.* ¶ 8.)

With respect to defining a class of plaintiffs, Plaintiff has proposed the following:

> All individuals who currently work, or have worked, for Defendant as a Direct Support Professional-Live In ("DSP-LI") at the Arey, Bowden, Clingman, Weaver, and Westridge group homes, at any time within the preceding 3-years from the date of filing the complaint.

(ECF No. 21 at 6.)

Defendant has not presented any argument or evidence that it did not have a policy of requiring DSP-LIs to clock out but remain at its group homes overnight and on call without compensation for those hours. Nor has Defendant challenged whether it used a seven-day work week for most of its DSP-LIs with the standard clock-in times, clock-out times, and overnight periods reflected in the charts in the declarations. Defendant has also not addressed

---

[2] If sleep time is not included, then Plaintiff herself did not regularly work over 40 hours in a Sunday-to-Saturday pay week. (ECF No. 21-1 at ¶ 9.) However, other declarants worked over 40 hours in a Sunday-to-Saturday pay week even exclusive of the sleep time. (*E.g.*, ECF No. 21-7 at ¶ 8.)

6

whether Plaintiff's proposed definition of the class is appropriate for this case. Instead, Defendant's contends that Plaintiff herself is uniquely dissimilar from all other DSP-LIs and this prevents conditional certification. (ECF No. 33 at 1.) Because this line of argument is not responsive to Plaintiff's evidence that there is a class of potential plaintiffs who were all affected by a common allegedly unlawful policy, the Court addresses it *infra*.

Returning to Plaintiff's evidence, the Court finds that the DSP-LI declarations satisfy Plaintiff's relatively modest burden for conditional certification. Specifically, these declarations support that Defendant did have the allegedly unlawful policy regarding sleep time for DSP-LIs at its group homes. *See Williams*, 585 F. Supp. 2d at 685 (holding two declarations were sufficient to warrant conditional certification where the declarations "suggest[ed] there could be remaining claimants who would willingly join the instant action"). Furthermore, because the declarations indicate that the sleep hours policy affected all DSP-LIs, the Court also finds that Plaintiff's articulation of the proposed class appropriately describes the potential plaintiffs for this action.[3] *See Diaz v. Quality Crab Co., Inc.*, 10-CV-15, 2011 WL 4498939, at *2 (E.D.N.C. Sept. 27, 2011) (approving conditional certification where "[p]laintiffs' complaint and supporting declarations establish that the proposed class members . . . all worked at defendants' . . . plant, advance similar claims and seek substantially the same form of relief."). Plaintiff's articulation also focuses the class to a manageably similar factual setting by specifying a single specific role at a handful of specific group homes. The Court therefore finds that Plaintiff has carried her burden for conditional certification of her FLSA collective action.

---

[3] The three-year span of the proposed class is based on the statute of limitations for an FLSA claim where there are allegations of willfulness. *See Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1035 (N.D. Cal. 2017) ("When plaintiffs allege willfulness, 'courts routinely approve a three-year notice period.'" (quoting *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010))).

7

The Court next turns to Defendant's arguments.

**B.    Defendant's Arguments Do Not Address the Relevant Inquiry**

Defendant makes two arguments why the Court should not conditionally certify this proposed class. First, Defendant argues that Plaintiff's own conditions of employment were unique, and that she is therefore too dissimilar to other DSP-LIs to bring a collective action on their behalf. (ECF No. 33 at 8–11.) Second, Defendant argues this case cannot proceed as a representative action because considerations of manageability, fairness, and judicial economy weigh against it. (ECF No. 33 at 11.) Defendant's arguments are not persuasive.

1. <u>Plaintiff's Personal Factual Dissimilarities Are Not A Bar To Conditional Certification</u>

Defendant's argument that Plaintiff is too dissimilar to her proposed class to represent it contains three sub-arguments. The Court addresses each in turn.

First, Defendant highlights that Plaintiff herself negotiated a modified schedule with Defendant wherein she did not work the full seven-days-on, seven-days-off schedule that other DSP-LIs worked, and generally worked fewer hours than other DSP-LIs. (ECF No. 33 at 8.) Defendant also highlights that Plaintiff's job duties were "individualized" in that they were dictated by the individual needs of the clients residing at particular group homes. (*Id.* at 10.) Defendant urges that these factual differences make Plaintiff too dissimilar from her proposed class for the Court to certify that class.[4] (*Id.* at 8.) However, this argument is not persuasive because "similarly situated" does not require that the situations of affected

---

[4] Defendant also states that Plaintiff is dissimilar from other DSP-LIs because she had "an agreement with [Defendant] that she would not be paid for uninterrupted sleep time." (ECF No. 33 at 8.) Although it is well-established that "an individual employee's right to a minimum wage and to overtime pay under [the FLSA]" is "nonwaivable," *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981), because courts do not decide substantive issues on conditional certification motions, *Adams*, 93 F. Supp. 3d at 454, the Court will not address the effect of any contract on the FLSA violation alleged here.

8

employees be factually identical; "[d]ifferences as to time actually worked, wages actually due and hours involved are . . . not significant to [the] determination." *McLaurin*, 271 F.R.D. at 469 (quoting *De Luna-Guerrero*, 338 F. Supp. 2d at 654). Instead, "similarly situated" requires that a group of plaintiffs be "victims of a common policy or scheme or plan that violated the law." *Quinteros*, 532 F. Supp. 2d at 772. Regardless of whether Plaintiff worked somewhat fewer hours than her colleagues, she is similarly situated to the proposed class in that she was not compensated for nighttime hours when she was required to clock out but remain at Defendant's group home—and this is the critical similarity that is common to the members of the proposed class in this case.

Second, Defendant argues that Plaintiff's modified schedule caused her to work so few hours in a week that her situation raises "individualized legal questions." (ECF No. 33 at 9.) Defendant does not identify what these "individualized legal questions" are or why they are so significant that they prevent conditional certification. (*Id.*) Defendant notes in an explanatory parenthetical to a case citation that the FLSA does not provide a remedy for pure gap time claims, however Plaintiff is not attempting to make a pure gap time claim under the FLSA.[5] (ECF No. 33 at 9 (citing *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1284 (4th Cir. 1996)). Defendant also notes that Plaintiff is bringing North Carolina state law claims individually, however Defendant does not elaborate on the significance of this point and has not cited any case demonstrating that the presence of an individually brought state labor law claim prevents FLSA conditional class certification. (ECF No. 33 at 9.) Rather, where a

---

[5] "In pure gap time claims, the employee seeks to recover for unpaid straight time in a week in which they worked no overtime." *Conner v. Cleveland County*, 22 F.4th 412, 421 (4th Cir. 2022). Here, Plaintiff claims she did work overtime. (*See* ECF Nos. 35 at 4 ("[Defendant] does not challenge that if sleep time hours are included . . . [Plaintiff] easily exceeds the 40-hour overtime threshold for many of the weeks she worked."); 21-1 at ¶ 9 (chart showing Plaintiff's work schedule).)

9

plaintiff brings multiple collective action claims, courts may certify several classes, each defined somewhat differently. *E.g.*, *Tom v. Hosp. Ventures LLC*, 17-CV-98, 2021 WL 2272386, at *2-3 (E.D.N.C. June 3, 2021) (conditionally certifying an FLSA collective action while simultaneously certifying an NCWHA class, where the classes were defined using different time periods of employment). A court may also allow a plaintiff to move to conditionally certify an FLSA collective action while reserving the right to later move for class certification for a state labor law claim. *Taveras v. York Healthcare, LLC*, 17 CV 6172, 2018 WL 10517523, at *6 (E.D.N.Y. Sept. 19, 2018). These examples indicate that the mere presence of a claim that is not part of the FLSA collective action is not an impediment to conditional certification.

Third and finally, Defendant argues that Plaintiff admitted to many character flaws during her deposition and these admissions "undermine her ability to present credible representative testimony on behalf of others." (ECF No. 33 at 9.) This argument is irrelevant here as the Court does not make credibility determinations when resolving a motion to conditionally certify an FLSA class. *Adams*, 93 F. Supp. 3d at 454.

### 2. Judicial Economy Does Not Require Denying Plaintiff's Motion

Defendant's next argument is that "[because] [Plaintiff] has not met her burden to establish the 'similarly situated' requirement . . . . consideration of manageability, fairness and judicial economy weigh heavily against certification." (ECF No. 33 at 11.) This argument is not persuasive because it relies on the premise that Plaintiff failed to carry her burden. The Court has found that Plaintiff did carry her burden, therefore that core premise is faulty. Additionally, because the Court found that Plaintiff carried her burden pursuant to a widely accepted test created to help courts effectively manage conditional certification, it follows that conditional certification here is manageable, fair, and efficient.

### C. The Parties Must Confer Regarding Notice

The Court now turns to the matter of notifying potential plaintiffs of this conditionally certified class action. "The FLSA 'manifests a preference that when collective action certification is granted, a court-controlled notice be provided to potential putative plaintiffs, rather than permitting unregulated solicitation efforts to secure joinder by those individuals.'" *Adams*, 93 F. Supp. 3d at 456 (quoting *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009)). A court's role is "managerial" as it "oversee[s] the joinder of additional parties to assure the task is accomplished in an efficient and proper way." *Id.* (quoting *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989)). In accomplishing this, a court exercises "broad discretion" *Roldan v. Bland Landscaping Co.*, 341 F.R.D. 23, 34 (W.D.N.C. 2022) (citing *Hoffmann-LaRoche Inc.*, 493 U.S. 165).

Plaintiff has asked that that the Court: (1) appoint Plaintiff's Counsel as Class Counsel; (2) order Defendant to produce contact information for all potential opt-in plaintiffs to Plaintiff's Counsel within seven days; (3) authorize sending a notice to the potential opt-in plaintiffs at Plaintiff's expense; (4) approve proposed notice and consent forms of Plaintiff's design, (ECF Nos. 21-10; 21-11); (5) order the notices be posted at Defendant's group homes; and (6) provide a 60-day opt-in period after the date the notice forms are mailed. (ECF No. 20 at 2.)

Although Defendant represents that it does have objections to the content and form of the notice in its brief, it did not assert them in its brief because it determined that objecting to the form of the notice prior to conditional certification would be premature. (ECF No. 33 at 11.) Instead, Defendant has asked that, should the Court conditionally certify Plaintiff's

11

class, the Court "order that the parties confer in an attempt to agree upon the content and form of notice as well as an appropriate manner of distribu[tion]." (*Id.* at 11-12.)[6]

Plaintiff replies that Defendant waived its objections by not including them in its opposition brief. (ECF No. 35 at 6.) Plaintiff also urges that ordering the parties to confer on the notice would unreasonably delay proceedings, and therefore the Court should allow Plaintiff's original proposal. (ECF No. 35 at 6-7.)

At this juncture, the Court declines to approve Plaintiff's notice or notification plan. Plaintiff cites *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 169 (S.D.N.Y. 2014), for the proposition that this Court should treat Defendant's unstated objections as waived, however that case is distinguishable. (ECF No. 35 at 6.) In *Jackson*, the defendant that was held to have waived its objections only mentioned the possibility of objections in a footnote where it stated that it "reserve[d] all rights to object to the form and content of [the notice and] the proposed method of delivery or communication." 298 F.R.D. at 169. Such language is so indefinite that it is not clear if the *Jackson* defendant actually had any objections, or if it was merely hedging in the event that it found a reason to object at a later time. Here, Defendant has been far more definite: Defendant has stated that it does have objections and that it wants an opportunity to address them with Plaintiff via an out-of-court conference. (ECF No. 33 at 11–12.)

Turning from the waiver issue to Defendant's request to confer with Plaintiff regarding the notice, the Court notes that courts routinely order parties to create a joint notification plan after conditionally certifying FLSA collective actions. *E.g.*, *Adams*, 93 F. Supp. 3d at 457.

---

[6] Defendant has not stated any objection, reserved or otherwise, to appointing Plaintiff's Counsel as Class Counsel, or to an order that Defendant produce contact information for potential opt-in plaintiffs following conditional certification.

Furthermore, it is likely that Plaintiff's proposed notice could benefit from additional input. For example, it does not contain a provision notifying potential plaintiffs that they may be deposed or called to testify if they opt in to the action. (*See* ECF No. 21-10.) The Court in *Jackson* believed this was an important part of a notice and ordered it added to the notice in that case, even as it treated objections to the notice as waived. 298 F.R.D. at 170. As for Plaintiff's point that allowing time for conference and objections will delay the proceedings, because parties are routinely ordered to attempt a joint proposal for notice forms and methods of distribution and Plaintiff offers no explanation why a delay would be especially detrimental under the circumstances here, the Court finds that any delay caused by this process will not be unreasonable.

Accordingly, at this time the Court will not approve Plaintiff's proposed notice form or opt-in form, nor will it approve Plaintiff's proposed methods of distribution or opt-in deadline. Instead, the Court will order that the parties confer and attempt to resolve their differences amicably. The Court will grant Plaintiff's unopposed requests that Plaintiff's Counsel be appointed Class Counsel, and that Defendant produce contact information for potential plaintiffs. The exact terms of that production are set out in more detail in the order below. Although Plaintiff has requested telephone numbers for potential plaintiffs, the order will *not* require Defendant to produce such telephone numbers because telephone numbers implicate privacy concerns and Plaintiff has not made a "special need" showing. *See Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 772 (D.S.C. 2017). Within thirty days of this order, the parties shall file a Joint Status Report regarding their efforts to agree on a notification plan, including their joint or individual proposals for such matters.

13

## IV. CONCLUSION

For the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 20), is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Plaintiff's claim under the FLSA is hereby conditionally certified as a collective action under 29 U.S.C. § 216(b).

2. The conditionally certified FLSA class is identified as "all individuals who currently work, or have worked, for Defendant as a Direct Support Professional-Live In ("DSP-LI") at the Arey, Bowden, Clingman, Weaver, and Westridge group homes, at any time within the preceding 3-years from the date of filing the complaint."

3. The Court appoints Plaintiff's present counsel as Class Counsel.

4. Within seven (7) days of this order, Defendant shall produce to Plaintiff's counsel a computer-readable data file containing the names, addresses, e-mail addresses, and dates of employment for all individuals who currently work, or have worked, for Defendant as a Direct Support Professional-Live In ("DSP-LI") at the Arey, Bowden, Clingman, Weaver, and Westridge group homes, at any time within the preceding 3-years from the date of filing the complaint.

5. The Court **DENIES WITHOUT PREJUDICE** Plaintiff's request for court approval of its proposed notice form, (ECF No. 21-10), consent form, (ECF No. 21-11), proposal for distribution, (ECF No. 20 ¶ 5(E)-(F)), and proposal for an opt-in period, (*id.* ¶ 5(G)).

6. The parties shall confer regarding an appropriate notice form, consent form, manner of distribution, and opt-in deadline.

7. Within thirty (30) days of this order, the parties shall file a Joint Status Report regarding their efforts to agree on each item identified in Paragraph 6 of this order and shall include in their joint report their joint or individual proposals for each of these items.

This, the 23rd day of September 2022.

/s/ Loretta C. Biggs
United States District Judge