IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 1:21-cv-42

| | | |
|---|---|---|
| ANGELA STALEY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR APPROVAL OF SETTLEMENT OF COLLECTIVE ACTION |
| v. | ) ) | |
| UMAR SERVICES, INC., | ) ) | |
| Defendant. | ) | |

## I.  INTRODUCTION

Named Plaintiff[1] Angela Staley ("Named Plaintiff"); Opt-in Plaintiffs Cavelle Lollar, Cassandra Alston, Courtney Cathcart, David Harwood, Freddie Pate, Imanie Hayes, Jessica Gibbs, Nikita McKoy, Regina Malone, Rhonda Jones, Shelby Allen, Vonda Hoover, and Yvette Whitaker ("Opt-in Plaintiffs") (collectively "Plaintiffs"); and Defendant UMAR Services, Inc. ("UMAR" or "Defendant") (together, the "Parties") have agreed to resolve the above-captioned lawsuit on a collective basis under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

The settlement satisfies the criteria for approval of an FLSA collective action settlement, as it resolves a *bona fide* dispute, was reached after contested litigation, and

---

[1] Unless otherwise specifically defined herein, all capitalized terms are defined in the Settlement and General Release Agreement.  *See* Settlement Agreement.

was the result of arm's-length settlement negotiations between counsel. Accordingly, Named Plaintiff seeks, and Defendant does not oppose, court approval of the Settlement and General Release Agreement (the "Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as Exhibit 1.

## II.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Defendant is a nonprofit organization that provides housing services to adults with intellectual or developmental disabilities and operates 21 group homes in North Carolina. (Pl.'s Compl., ¶ 11, ECF No. 1.) Named Plaintiff worked for Defendant as a Direct Support Professional Live-In ("DSP-LI"). (Pl.'s Compl., ¶ 10.) Named Plaintiff alleges that Defendant violated the FLSA by failing to pay Plaintiffs overtime compensation for all hours worked in excess of forty in a workweek.[2] (Pl.'s Compl., ¶ 33.) Specifically, Named Plaintiff alleges that Defendant unlawfully failed to pay Plaintiffs overtime wages because Defendant treated sleep time hours as non-compensable time. (Pl.'s Compl., ¶ 26.) Defendant denies any liability for alleged failure to pay wages under the FLSA and disputes the claims asserted in the Lawsuit. (Def.'s Answer, ECF No. 7.)

Named Plaintiff filed a Motion for Conditional Certification and Facilitation of Notice on October 29, 2021, (ECF No. 20) which the Court granted in part on November 23, 2022. (ECF No. 36.) The Court approved the notice and consent forms on December 6, 2022, which Plaintiffs' counsel ("Plaintiffs' Counsel") mailed to potential Opt-in

---

[2] Named Plaintiff initially filed her Complaint as a hybrid collective action under the FLSA and a Rule 23 class action under the North Carolina Wage and Hour Act. Named Plaintiff subsequently abandoned her Rule 23 claims and sought conditional certification of her collective action claims, which the Court granted in part on November 23, 2022.

2

Plaintiffs.  (ECF No. 40, Gibbons Decl. ¶ 8.[3])  In total, fourteen Opt-in Plaintiffs joined the lawsuit, including Named Plaintiff.  (ECF Nos. 19.1–.10, 23.1, 32.1, 42.1.)

The Parties have collected and exchanged significant discovery, including time and payroll records.  (Gibbons Decl. at ¶ 9.)  Both Parties' counsel created detailed damage analyses, based on Defendant's payroll records.  (*Id.*)

In September 2023, Defendant notified its employees that its ability to continue operations was in jeopardy due to severe financial difficulties.  (*Id.* at ¶ 10.)  On September 21, 2023, the Parties participated in a mediation before experienced mediator Steven Dunn. (*Id.*)  Additional information about Defendant's impending insolvency and risk of ceasing operations or seeking bankruptcy protection was shared with Plaintiffs at mediation.  (*Id.*) Although this mediation ended in an impasse, the Parties continued settlement discussions and ultimately agreed to settle the Lawsuit, the terms of which are memorialized in the Settlement Agreement.  (*Id.*)  In order to fund the Settlement, Defendant will borrow money from another non-profit entity that provides similar services as Defendant.  (*Id.*)

Plaintiffs have approved and consented to the terms of the Settlement.  (*Id.* at ¶ 16) The settlement terms reflect the economic realities of Defendant's financial condition.  (*Id.* at ¶ 10.)  In agreeing to settle this matter, Plaintiffs gave weight to the interests of Defendant's mission to serve adults with intellectual or developmental disabilities.  (*Id.*)

---

[3] The Declaration of Philip J. Gibbons is filed contemporaneously with this Memorandum.

3

## III.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement Agreement provides that the Parties agree to settle all claims for the amount of $125,000.000 ("Gross Settlement Amount"), from which the Defendant will pay an Incentive Fee ("Incentive Fee") to Named Plaintiff in the amount of $5,000.00, attorneys' fees ("Attorneys' Fees") to Plaintiffs' Counsel in the amount of $41,666.67, and reimbursement of advanced litigation costs to Plaintiff's Counsel in the amount of $3,987.47.   (Ex. 1 at §§ 3, 5.)   Defendant will pay the remaining $74,345.86 ("Net Settlement Amount") to Named Plaintiff and the Opt-in Plaintiffs based on each Plaintiff's *pro rata* damages as determined by Defendant's time and payroll records, plus $500 per Plaintiff for a full release of claims.  (*Id.* )

Within 30 days of Court Approval of the Settlement Agreement, Defendant will deliver the Settlement Payments, Attorneys' Fees and expenses, and Incentive Fee to Plaintiffs' Counsel's office.  (Ex. 1, at § 3, 5.)  Within three business days of receipt of the Settlement Payments, Attorneys' Fees, and Incentive Fee, the Parties will file a stipulation to dismiss the action with prejudice.  (*Id*. at § 6.)

## IV.   ARGUMENT

### A.   <u>Applicable Legal Standard for Approval of FLSA Settlements</u>

The standard for approval of an FLSA settlement is straightforward: a district court should approve a settlement if it was reached through contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute.  *Latham v. Branch Banking and Trust Co.,* 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014).  In evaluating whether a settlement

is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel representing the plaintiffs; (5) the opinions of Plaintiffs' Counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of the plaintiffs' success on the merits and the amount of the settlement in relation to potential recovery. *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136 at *29 (E.D. Va. 2009).

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns present in a Rule 23 settlement. Indeed, "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date." *Diaz v. Scores Holding Co., Inc.*, 2011 WL 6399468, at *2 (S.D.N.Y. 2011). Generally, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with Plaintiffs' Counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055, at *5 (E.D. Va. 2009).

### B. **The Parties Have a *Bona Fide* Dispute**

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over FLSA provisions. *Lomascolo*, 2009 WL 3094955, at *16 (citing

*Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982).

Here, Named Plaintiff alleges that Defendant violated the FLSA by failing to treat "sleep time" hours as compensable time, thus depriving Plaintiffs of overtime wages. (Pl.'s Compl., ¶ 26.) Defendant denies any liability for alleged failure to pay wages under the FLSA and disputes the claims asserted in the Lawsuit. (Def.'s Answer, ECF 7.) There is no dispute about Plaintiffs' hours worked, as reflected in Defendant's payroll records. The only dispute in this case is whether the "sleep time" at issue in this lawsuit is "compensable time" under the FLSA. If it is compensable, Plaintiffs are entitled to recover their unpaid overtime wages. If it is not compensable, Defendant is in compliance with the FLSA and no damages are due to Plaintiffs. Thus, significant legal questions remain, and the Court should find that a *bona fide* dispute exists between the parties.

## C. The Settlement Agreement Is Fair and Reasonable, and Should Be Approved

### 1. The Parties Exchanged Sufficient Discovery.

The Parties engaged in discovery, including exchanging written discovery in preparation of Plaintiff's Motion for Conditional Certification and conducting the depositions of Plaintiff and Defendant's Human Resources Director. (Gibbons Decl. ¶ 9.) As discussed above, Defendant also shared critical information related to its financial status. (*Id.*) Based on this information, Named Plaintiff and Plaintiffs' Counsel reviewed, analyzed, and formulated potential damage calculations under the FLSA for Plaintiffs. (*Id.*) Utilizing these calculations and investigation, Named Plaintiff concluded she had sufficient information about her claims, the claims of the Opt-in Plaintiffs, Defendant's

6

ability to pay a judgment if Plaintiffs' prevailed, and Defendant's defenses from which to fairly settle her case. (*Id.*) The amount of discovery was sufficient and supports approval of the settlement. *See e.g., Myers v. Loomis Armored US, LLC*, 2020 WL 1815902 at *4 (W.D.N.C. 2020).

### 2. The Stage of the Proceedings Weighs in Favor of Approval.

This Settlement was reached after extensive discovery and litigation. However Defendant's financial difficulties, as well as the complexity, expense, and further duration of this litigation weighs heavily in favor of the Court finding that the settlement is adequate, fair, and reasonable.

Resolution of the disputed legal issues would require substantial time and resources, including dispositive motions, the potential of a multiple-day trial, post-trial motions, and possible appeals. (Gibbons Decl. ¶ 11.) Although these legal issues remain unresolved, counsel for the Parties had sufficient information to assess the respective strengths and weaknesses of their case and conclude that the Settlement is in the best interests of the Parties. (*Id.*) Accordingly, both Parties recognize that "these proceedings advanced to a stage sufficient to permit the Parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arm's length negotiations with the understanding that it would be a difficult and costly undertaking to proceed to trial." *Lomascolo*, 2009 WL 3094955, at *11. Accordingly, Named Plaintiff believes that the settlement achieved at this stage is an excellent result for her and the Opt-in Plaintiffs that provides compensation after a long period of litigation. (Gibbons Decl. ¶ 11.)

7

### 3. The Settlement Agreement was Fairly and Honestly Negotiated.

"In the absence of any evidence to the contrary," a presumption of fairness arises where a settlement is reached in arm's-length negotiations between capable, experienced counsel after significant exchange of information. *Winingear v. City of Norfolk*, No. 2:12cv569, 2014 WL 3500996, at *3 (E.D. Va. 2014). Here, there is no evidence of fraud or collusion present with respect to the Parties' Settlement Agreement, and this factor favors the finding of a fair and reasonable settlement. (Gibbons Decl. ¶ 12.) The settlement terms were reached in an adversarial proceeding through arm's length negotiations between capable attorneys with extensive experience with wage and hour claims. (*Id.*) The terms were reached only after Plaintiffs' Counsel engaged in discovery regarding the facts of the case and the merits of Plaintiffs' claims, their likelihood of success at trial, as well as Defendant's defenses. (*Id.*) The Parties also engaged in two good faith, although unsuccessful, mediations prior to reaching the settlement. (*Id.*) There can be no doubt that the Parties were well-informed about the strengths and weaknesses of their respective positions, especially considering both Plaintiffs' Counsel's and Defendant's Counsel's experience at handling similar claims involving FLSA violations.

### 4. Named Plaintiff and the Opt-in Plaintiffs Were Represented by Experienced Counsel.

Named Plaintiff and the Opt-in Plaintiffs had the benefit of legal counsel with extensive knowledge and experience in wage and hour litigation. (Gibbons Decl. ¶¶ 1–7,

18–21.)  The undersigned counsel was familiar with the facts and law in this case and has negotiated numerous FLSA collective action settlements.  (*Id.*)

### 5.  Plaintiffs' Counsel and Named Plaintiff Support the Agreement.

In Plaintiffs' Counsel's view, the Agreement provides substantial benefits to Plaintiffs considering the attendant risks, difficulties, delays and uncertainties of litigation, trial, and post-trial proceedings.  (*Id.* at ¶ 12.)  The Agreement provides relief to Plaintiffs and eliminates the inherent risks both sides would bear if this case continued.  (*Id.*)  Under these circumstances, there is a strong presumption of fairness.  *See Lomascolo*, 2009 WL 3094955, at *10 ("A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.")  Named Plaintiff was apprised of the terms of the Agreement and authorized Plaintiffs' Counsel to accept the Settlement.  (*Id.* at ¶ 14.)  As discussed below, the recovery here is fair and reasonable given the range of potential recovery, the assumptions used in calculating the Plaintiffs' damages, and Defendant's financial condition.

### 6.  The Probability of Success on the Merits and the Amount of the Settlement in Relation to Potential Recovery.

The probability of Plaintiffs' success on the merits and other ancillary issues is disputed by the Parties.  (Gibbons Decl. ¶ 9.)  Plaintiffs' Counsel initially sought approximately $400,000 in unpaid overtime, plus an equal amount for liquidated damages, on behalf of Plaintiffs.  (*Id.*)  Defendant disputed Plaintiffs' calculation, and calculated

damages for unpaid overtime (assuming, *arguendo*, that the "sleep time" was "compensable time" under the FLSA) at $50,000. (*Id.*) The amount of settlement is $125,000, which represents .3125 of the unliquidated overtime sought by Plaintiffs and 2.5 times the amount of damages calculated by Defendant. (*Id.*) The settlement before the Court, however, also reflects the economic reality that the probability of success on the merits is minimal because continued litigation would have resulted in Defendant ceasing its operations or seeking bankruptcy protection. (*Id.*) Under either scenario, the Named Plaintiff and Opt-in Plaintiffs would likely have no recovery at all. (*Id.*) Accordingly, the $125,000 settlement amount is a far more favorable outcome for Named Plaintiff and the Opt-in Plaintiffs. (*Id.*) This factor supports approval of the Parties' Settlement Agreement as fair and reasonable.

### D. The Incentive Award to Named Plaintiff Is Justified and Should Be Approved

Pursuant to the Parties' Settlement Agreement and subject to the approval of the Court, Defendant has agreed to provide the Named Plaintiff with an Incentive Award payment in the amount of $5,000.00 for her significant contributions to the prosecution and resolution of the lawsuit. (*See* Ex. 1, § 5.)

Here, the role of the Named Plaintiff was crucial. She sacrificed her time to prosecute this action on behalf of her fellow current and former colleagues, sat for a deposition, participated in two mediations, and routinely conferred and corresponded with Counsel on a regular basis, staying abreast of current pleadings, and settlement-related informal discovery. (Gibbons Decl. ¶ 14); *see Speaks v. U.S. Tobacco Coop., Inc.*, No.

5:12-CV-729-D, 2018 WL 988083, at *3 (E.D.N.C. Feb. 20, 2018) (noting that "without incentive awards, the class representatives would not be rewarded for their participation or for the risk of pursuing this action with no promise of a successful outcome.").

Finally, the Service Award payment of $5,000.00 is consistent with those approved in similar wage and hour collective actions within this Circuit. *See Kay Co. v. Equitable Prod. Co.*, 749 F.Supp.2d 455, 473 (S.D.W. Va. 2010) (awarding $15,000 to each of the six class representatives); *Speaks*, 2018 WL 988083, at *3 (approving service awards totaling $100,000 to eleven class representatives); *Savani v. URS Prof'l Sols. LLC*, 121 F.Supp.3d 564, 577 (D.S.C. 2015) (finding $15,000 service award to individual class representative reasonable). The $5,000.00 Service Award payment requested by Named Plaintiff represents 4% of the $125,000.00 Gross Settlement Amount. (Ex. 1, §§ 3, 5.) This payment is comparable to participation award payments made to plaintiffs in similar wage and hour actions. *See e.g.*, *DeWitt v. Darlington Cnty., S.C.*, No. 4:11-CV-740-RBH, 2013 WL 6408371, at * 15 (D.S.C. Dec. 6, 2013) (approving incentive award to class representatives of $7,500.00, which represented 3.33% of the settlement fund). For all of these reasons, the Service Award payment of $5,000.00 to Named Plaintiff Angela Staley should be approved as fair and reasonable.

### E. Attorney's Fees and Litigation Costs Should Be Approved

In connection with this motion, Named Plaintiff respectfully moves this Court for an order approving as reasonable Plaintiffs' Counsel's request for attorneys' fees and out-of-pocket litigation costs.

11

## 1. The Fee Shifting Provisions of the FLSA Provide for Attorney's Fees.

The FLSA allows for a plaintiff to recover his/her attorneys' fees and expenses under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Lane v. Ko-Me, LLC, Case*, 2011 WL 3880427, at *2 (D. Md. 2011). Similarly, the FLSA provides for the reimbursement of costs. 29 U.S.C. § 216(b). Awards of reasonable out-of-pocket costs incurred by counsel are routinely approved by courts as part of FLSA settlements. *Hackett v. ADF Rest. Investments*, 259 F. Supp. 3d 360, 369 (D. Md. 2016).

Plaintiffs' Counsel requests a fee award of one-third (1/3) of the Gross Settlement Amount. (Gibbons Decl. ¶ 15; Ex. 1 § 5.) To date, Plaintiffs' Counsel has spent over 176.00 hours advocating on behalf of Plaintiffs and incurred a lodestar fee of $60,107.47. (Gibbons Decl., ¶ 15; *see also* Gibbons Decl. Ex. A.) Attorney's fees equivalent to one-third of the Gross Settlement Amount are reasonable and should be approved.

## 2. The Percentage of the Fund Method, Supplemented with the Lodestar Cross-check Should be used to Determine a Fair and Reasonable Fee Award.

The Supreme Court has recognized that a lawyer "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Fourth Circuit has not required a particular method for calculating attorneys' fees in common fund cases, but "a fee award determined by percentage is preferred over the

12

lodestar method in common cases such as this one." *Hatzey v. Divurgent, LLC*, 2018 WL 5624300, at *4 (E.D. Va. Oct. 19, 2018); *see e.g.*, *Savani v. URS Prof. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("Within this Circuit, the percentage-of-recovery approach is not only permitted but is the preferred approach to determine attorneys' fees."); *Hall v. Higher One Machines, Inc.*, 2016 WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016) (quoting *Phillips v. Triad Guar., Inc.*, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016) ("the percentage of the fund method, supplemented with the lodestar cross-check, is the appropriate means by which to determine an award of attorneys' fees in this case.")).

There are several reasons that the courts prefer the percentage method. First, the percentage method "better aligns the interests of Plaintiffs' Counsel and class members because it ties the attorney's fee award to the overall result achieved rather than the hours expended by the attorneys." *Jones v. Dominion Res. Servs.* 601 F. Supp. 2d 756, 759 (S.D. W.Va. 2009). Second, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *Id.* Third, the percentage method preserves judicial resources because it "is less cumbersome to apply than the lodestar computation." *In re Wachovia Corp.*, 2011WL 5037183, at *2 (W.D.N.C. Oct. 24, 2011).

In applying the common fund method, the Supreme Court has held that it is appropriate to award attorneys' fees as a percentage of the gross settlement amount, even where amounts to be paid to the settlement class members who do not file claims will revert to the Defendant. *See Boeing*, 444 U.S. at 480-81. ("Although the full value of the benefit

13

to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee member in the exact proportion that the value of his claim bears to the total recovery.")

"Even where the percentage method is used, however, the lodestar calculation may still be applied as a 'cross-check' in the determination of a reasonable percentage." *In re Wachovia Corp.*, 2011WL 5037183, at *3. "Importantly, 'where the lodestar fee is used as a mere cross-check to the percentage method of determining reasonable attorney's fees, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Fangman v. Genuine Title, LLC*, 2017 WL 2591525, at *6 (D. Md. June 15, 2017) (citing *Singleton v. Domino's Pizza, LLC,* 976 F.Supp.2d 665, 688 (D. Md. 2013)).

### 3. The Requested Fees are Reasonable Under the Common Fund Method.

"In evaluating the reasonableness of attorney's fees under the common-fund doctrine, courts generally examine the following factors: '(1) the results obtained for the class, (2) the quality, skill and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy.'" *DeWitt v. Darlington County, S.C.*, 2013 WL 6408371, at *7 (quoting *Kay Co.*, 749 F. Supp. 2d 255, 464 (S.D. W.Va. 2010); see also *Scott v. Family Dollar Stores, Inc.*, 2018 WL 1321048, at *5 (W.D.N.C. March 14, 2018).

#### a. Results Obtained for the Collective Members

Success warranting attorneys' fees occurs when the moving party prevails "on any significant issue in litigation which achieves some of the benefit the parties sought in

14

bringing the suit." *Arvinger v. Mayor and City Council of Baltimore*, 31 F.3d 196, 200 (4th Cir. 1994). Named Plaintiff filed this action as a collective action under the FLSA. (Pl.'s Compl., ECF No. 1; Gibbons Decl. ¶ 8.) Here, Named Plaintiff and the Opt-In Plaintiffs sought payment of unpaid overtime wages. Defendant contends that the sleep time at issue in this lawsuit is not compensable, and therefore, Defendant is not liable for any unpaid overtime wages whatsoever. (Def.'s Answer; Gibbons Decl. ¶ 8.) While continuing to deny liability, Defendant has agreed to pay Plaintiffs $125,000 to resolve their FLSA claims, inclusive of attorneys' fees and costs, which is undeniably a "benefit the parties sought in bringing the suit."

The relief obtained under the FLSA is fair and reasonable under the circumstances. Defendant does not concede liability and still contends that, absent settlement, Named Plaintiff and the Opt-In Plaintiffs would receive no unpaid overtime damages under the FLSA. (*Id.*) The Agreement reflects a compromise that recognizes the economic realities of Defendant's financial resources, as well as the strengths and weaknesses of the Parties' respective arguments. (*Id.*) This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### b. Quality, Skill and Efficiency of Attorneys Involved

"Employment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law. Moreover, as with any litigation in federal court, attorneys in overtime cases must be thoroughly familiar with developments and changes in the Federal Rules of Civil Procedure . . . ." *DeWitt*, 2013 WL 6408371, at

15

*11. Plaintiff's lead attorney, Philip J. Gibbons, Jr.'s ("Gibbons") substantial experience litigating wage and hours cases allowed Named Plaintiff to obtain an excellent result in an effective and efficient manner. (Gibbons Decl.¶¶ 1–7.) Gibbons drew on his over 27 years of employment law experience to obtain the information to negotiate the settlement. (*Id.*) This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### c. Complexity and Duration of Case

Courts have recognized that wage and hour cases involve complex legal issues. *See e.g.*, *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."); *DeWitt*, 2013 WL 6408371, at *8 ("In the Court's experience, overtime cases under the Fair Labor Standards Act can be very complex and difficult, involving the interaction among various statutes, regulations, and evolving case-law."). Sleep time cases are complex and difficult. By way of example, in *Giguere v. Port Resources, Inc.*, 927 F.3d 43 (1st Cir. 2019) and *Clayton v. Delmarva Community Services, Inc.*, 447 F.Supp.3d 404 (D. Md. 2020), the First Circuit and the District of Maryland considered the identical issues present here and reached two opposite conclusions.

Regarding duration, Plaintiffs' Counsel has litigated this matter without any compensation since January 15, 2021. The complexity and duration warrant approval of the fee requested by Plaintiffs' Counsel.

### d. Risk of Non-payment

Plaintiffs' Counsel handled this case on a contingency fee basis with no assurance of payment for their services. (Gibbons Decl. ¶ 22.) Under these circumstances, the risk of non-payment weighs in favor of the award of fees requested by Plaintiffs' Counsel. This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### e. Awards in Similar Cases

Attorney fee awards in common fund cases are often calculated as a percentage of the fund created. In this Circuit, numerous courts have awarded fees equal to one-third of the total settlement fund. *See e.g.*, *DeWitt*, 2013 WL 6408371, at *9 ("One-third of the recovery appears to be a fairly common percentage in contingency cases . . ."); *Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368-69 (D. Md. 2016) (awarding one-third of settlement amount); *McClaran v. Carolina Ale House Operating Co., LLC*, 2015 WL 5037836, at *5 (D. S.C. Aug. 26, 2015) ("After reviewing awards in other wage and hour cases brought as FLSA collective actions and class actions, it appears that the percentage requested here is reasonable. In a number of cases, courts found that a fee-award of one-third of the settlement fund was reasonable.") This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### f. Objections

Named Plaintiff has approved the terms of the Settlement Agreement, including an award of attorneys' fees equal to one-third of the Gross Settlement Amount. (Gibbons Decl. ¶ 16.) This lawsuit is being settled as an opt-in collective action under the FLSA.

17

Unlike a Rule 23 settlement, individuals who may object to an award of attorney's fees, if any, are not obligated to opt-in to the lawsuit and do not waive their rights under the FLSA or any other state or federal law by choosing not to participate. Nonetheless, each eligible Opt-in Plaintiff has been apprised of the attorney's fees provided by the settlement, his or her estimated settlement share, the formula for calculating the settlement, and the terms of the settlement. (*Id.*) No Plaintiff objected. (*Id.*) This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### g. Public Policy

Public policy considerations weigh in favor of granting Plaintiffs' Counsel's requested fees. "Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Latham*, 2014 WL 464236, at *2 (citing *Aros v. United Rentals, Inc.*, 2012 WL 3060470, at *4 (D. Conn. 2012)). "Public policy favors adequate awards of attorney's fees in cases under the FLSA to encourage aggrieved plaintiffs to bring these cases and to provide incentives for plaintiffs' counsel to take such cases." *DeWitt*, 2013 WL 6408371, at *10. This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### 4. A Lode-Star Cross Check Ensures the Percentage Amount is Fair and Reasonable.

The lodestar is defined as "the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Rum Creek Coal Sales, Inc. v. Capertone*, 31 F.3d 169, 174 (4th Cir. 1994). Courts in this circuit have found that a lodestar multiplier ranging from 2 to

18

4.5 demonstrates the reasonableness of a requested percentage fee. *Fangman*, 2017 WL 2591525, at \*6 (citations omitted). In *Barber v. Kimbrell's, Inc.*, the Fourth Circuit articulated 12 factors for courts to consider in determining the reasonableness of lodestar fee applications:

(1)  the time and labor expended;
(2)  the novelty and difficulty of the questions raised;
(3)  the skill required to properly perform the legal serves rendered;
(4)  the attorney's opportunity costs in pressing the instant litigation;
(5)  the customary fee for like work;
(6)  the attorney's expectations at the outset of the litigation;
(7)  the time limitations imposed by the client or circumstances;
(8)  the amount in controversy;
(9)  the experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and
(12) attorney's fee awards in similar cases.

577 F.2d 216, 226 n.28 (4th Cir. 1978). An analysis of these factors demonstrates that the fee award requested by Plaintiffs' Counsel is reasonable.

### a. The time and labor expended warrants approval of the requested fees.

Plaintiffs' Counsel spent significant effort and time to achieve the settlement. As set forth in the Declaration of Philip J. Gibbons, Jr., Plaintiffs' Counsel incurred fees of $60,107.47 to date, which reflects a decrease for legal work deemed unnecessary or duplicative. (Gibbons Decl. ¶ 15.) Plaintiffs' Counsel worked diligently on this case, analyzing client documents, developing the theory of liability, obtaining and analyzing discovery, taking and defending depositions, prevailing on a contested motion for FLSA

19

conditional certification, reviewing and analyzing records and data for Plaintiffs, preparing detailed damages analysis, communicating with Named Plaintiff and the Opt-in Plaintiffs, participating in two mediations, and researching and drafting various pleadings. (*Id*. at ¶ 17.) Plaintiffs' Counsel will continue to work diligently through the final administration of the settlement. (*Id*.) This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### b. The novelty and difficulty of the questions raised.

The FLSA is a complicated wage and hour law. This case involved complex legal issues related to whether Plaintiffs' "sleep time" is considered compensable time. Resolution of this issue requires analyzing numerous Department of Labor regulations addressing compensable and non-compensable time spent on an employer's premises. As mentioned above, the First Circuit Court of Appeals and the District of Maryland have reached opposite conclusions regarding the identical issues present in this case. This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### c. The skill required to properly perform the legal services rendered warrants approval of the requested fees.

Wage and hour collective actions under the FLSA require a high degree of skill and knowledge to litigate effectively and efficiently. (Gibbons Decl. ¶ 3.) This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### d. Plaintiffs' Counsel's opportunity costs in filing this case warrant approval of the requested fees.

"Courts have generally recognized that a contingent fee lawyer may have the right

20

to expect a fee greater than if his fee were guaranteed." *Va. Acad. Of Clinical Psychologists v. Blue Shield of Va.*, 543 F. Supp. 126, 148 (E.D. Va. 1982). Plaintiffs' Counsel's requested fee of one-third is reasonable because Plaintiffs' Counsel expected a contingent fee at the outset of the litigation. Plaintiffs' Counsel took on risk of non-payment, the burden of advancing litigation expenses, and the opportunity cost of having to turn down other potentially lucrative work. This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### e. Plaintiffs' Counsel's requested fees are consistent with customary fees for like work.

To determine a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In prior cases, the hourly rates at which Plaintiffs' Counsel calculated their lodestar have been approved in North Carolina district courts: Plaintiffs' Counsel, Philip J. Gibbons, Jr. at $500 per hour and Corey M. Stanton at $250 & $300 per hour. (Gibbons Decl. ¶¶ 19–20.) The requested lodestar rates for Philip J. Gibbons, Jr. ($500 per hour) and Corey M. Stanton ($250 & $300 per hour) are consistent with the "prevailing market rates" in the Western, Middle, and Eastern Districts of North Carolina for experienced employment law attorneys. (*Id.*) This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### f. Plaintiffs' Counsel expected a contingent recovery at the outset of litigation, which supports the requested fee.

"Courts have generally recognized that a contingent fee lawyer may have the right

to expect a fee greater than if his fee were guaranteed." *Va. Acad. Of Clinical Psychologists v. Blue Shield of Va.*, 543 F. Supp. 126, 148 (E.D. Va. 1982). Plaintiffs' Counsel's requested fee of one-third is reasonable because Plaintiffs' Counsel expected a contingent fee at the outset of the litigation. Plaintiffs' Counsel took on risk of non-payment, the burden of advancing litigation expenses, and the opportunity cost of having to turn down other potentially lucrative work. (Gibbons Decl. ¶ 22.) Additionally, the contingency agreement between Named Plaintiff and Plaintiffs' Counsel states that Plaintiffs' Counsel is entitled to 40% of the recovered sum, which Plaintiffs' Counsel reduced to facilitate settlement. (*Id.*) This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### g. Time limitations imposed under the circumstances.

Not applicable.

### h. Amount in controversy and the results obtained.

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *Randle v. H&P Capital, Inc.*, 513 F. Appx. 282, 284 (4th Cir. 2013) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Here, the "amount in controversy" is skewed by the economic reality that Defendant's financial condition rendered the amount in controversy meaningless. Plaintiffs' Counsel successfully negotiated a settlement that provided Named Plaintiff and the Opt-in Plaintiffs with the highest recovery available under the circumstances. (Gibbons Decl. ¶ 12.) This factor

22

supports the approval of Plaintiffs' Counsel's attorney fee request.

### i. Experience, reputation, and ability of the attorneys.

Plaintiffs' Counsel has significant experience litigating wage and hour claims. (*Id.* at ¶¶ 1–7, 18–21.) This experience was instrumental in efficiently settling this matter as an FLSA collective action without the need for protracted litigation. This factor supports the approval of Plaintiffs' Counsel's attorney fee request.

### j. Undesirability of the case within the legal community in which the suit arose.

There are very few attorneys in the North Carolina legal community that focus primarily on contingency-based plaintiff-side wage and hour employment law. (*Id.* at ¶ 23.) This would make this case undesirable to many attorneys, and thus supports Plaintiffs' Counsel's fee request.

### k. Nature and length of the professional relationship between attorney and client.

The relationship between Named Plaintiff and Plaintiffs' Counsel is limited and counsel anticipates no future work on Named Plaintiff's behalf. (*Id.* ¶ 24.) This factor is neutral regarding an award of attorney's fees.

### l. Attorney's fee awards in similar cases.

As of November 9, 2023, Plaintiffs' Counsel incurred $60,107.47 in attorneys' fees. (Gibbons Decl. ¶ 15; Gibbons Decl. Ex. A.) In preparing Plaintiffs' Counsel's declaration, counsel decreased or deleted billings that might be considered duplicative or excessive. (*Id.*) The one-third fee requested by Plaintiffs' Counsel is in line

with fees awarded in similar cases.  With a lodestar amount of $60,107.47, the requested fees represent 69.32% of the lodestar amount.  (*Id.*)

F.     **The Court Should Approve Litigation Costs and Expenses**

Plaintiffs' Counsel requests reimbursement of $3,987.47 in litigation costs from the Gross Settlement Amount under the Settlement Agreement.  (Gibbons Decl. ¶ 25; Gibbons Decl. Ex. B; Ex. 1, § 5.)  Attorneys may be compensated for litigation expenses "reasonably incurred by counsel in prosecuting a class action."  *In Re Wachovia Corp.*, 2011 WL 5037183, at *7; *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (reimbursable costs include "reasonable out-of-pocket expenses that are normally charged by an attorney to a fee-paying client," including costs associated with filings and travel).

Here, Plaintiffs' Counsel requests the Court approve reimbursement of:

- Federal court filing fee ($402.00);

- Postage for serving the summons and complaint by certified mail ($7.80);

- Defendant's representative's deposition transcript ($464.65);

- Named Plaintiff's deposition transcript ($288.80);

- Plaintiffs' share of the first mediation fee ($1,050.00);

- Postage for mailing notice and consent forms to potential opt-in plaintiffs ($12.06); and

- Plaintiffs' share of the second mediation fee ($1,762.16).

(Gibbons Decl. ¶ 25; Gibbons Decl. Ex. B.)

24

## V.     CONCLUSION

For the reasons stated herein, Named Plaintiff respectfully requests that the Court grant this Joint Motion for Approval of Settlement, and enter the accompanying proposed Approval Order.

Dated: November 9, 2023.

Respectfully submitted,

s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, NC 28277
Telephone: 704-612-0038
Email: phil@gibbonslg.com
Email: corey@gibbonslg.com
*Attorneys for Plaintiffs*

25

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), undersigned counsel hereby certifies that the foregoing brief contains 6,192 words and complies with the word count limit of 6,250 words.  As provided in LR 7.3(d), the word count is calculated using MS Word's automatic word count function and includes the body of the brief, headings, and footnotes, but does not include the caption, signature lines, certificate of service, word count certification, and any cover page or index.

s/ Corey M. Stanton
Corey M. Stanton, NCSB #56255
*Attorney for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on November 9, 2023, the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.

<u>s/ Corey M. Stanton</u>
*Attorney for Plaintiffs*